No. 23-16111

━━━━━━━━━━━━━━━━━━━━━━━━

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

━━━━━━━━━━━━━━━━━━━━━━━━

GLORIA ROMAN, GERARDO VAZQUEZ, JUAN AGUILAR, and all others similarly situated,

Plaintiffs-Respondents,

v.

JAN-PRO FRANCHISING INTERNATIONAL, INC.

Defendant-Petitioner.

_____

Appeal from the U.S. District Court for the Northern District of California
The Honorable William H. Alsup, Case No. 3:16-cv-05961-WHA

_____

**DEFENDANT'S EMERGENCY MOTION TO STAY PROCEEDINGS IN THE DISTRICT COURT PENDING DEFENDANT'S APPEAL OF THE DENIAL OF ITS MOTION TO COMPEL ARBITRATION**

_____

Richard H. Rahm (Bar No. CA-130728)
rrahm@littler.com
**LITTLER MENDELSON, P.C.**
333 Bush Street, 34th Floor
San Francisco, California 94104
Telephone: 415.433.1900

Jeffrey M. Rosin (Bar No. MA-629216)
jrosin@ohaganmeyer.com
**O'HAGAN MEYER**
111 Huntington Avenue, Suite 719
Boston, Massachusetts 02199
Telephone: 617.843.680

Norman M. Leon (Bar No. IL-6239480)
norman.leon@us.dlapiper.com
**DLA PIPER LLP (US)**
444 W. Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: 312.368.2192

*Attorneys for Defendant-Appellant Jan-Pro Franchising International, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Jan-Pro Franchising International, Inc. states it is owned by Lynx Franchising, LLC. No publicly held corporation owns more than 10% of the stock of Jan-Pro Franchising International, Inc.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 2

    A. JPI's Business ............................................................................................................. 2

    B. The Plaintiffs and this Lawsuit ................................................................................. 3

    C. The District Court Certifies a Class that Dates back to 2004 and Grants in Part Plaintiffs' Motion for Summary Judgment ................................................................. 5

    D. JPI's Rule 23(f) Petition ............................................................................................ 6

    E. The District Court's Refusal to Completely Stay Proceedings .............................. 8

III. ARGUMENT ..................................................................................................................... 9

    A. The Supreme Court Has Made Clear That a Stay of Proceedings Is Mandatory When a Party Files an Interlocutory Appeal from the Denial of a Motion to Compel Arbitration ................................ 9

    B. The District Court's Basis for Refusing to Grant a Stay Was Erroneous ........................................ 12

    C. It Is Settled Law That Templates May Be Used to Show That Class Members Agreed to Arbitrate 14

    D. Rule 1004 of the Federal Rules of Evidence Allows a Party to Rely on Other Evidence to Prove the Existence of an Agreement ...................................... 15

    E. The District Court Impermissibly Applied Two Different Standards to the Same Question .......... 17

    F. The District Court's Advisory Opinion on Whether JPI Could Enforce the Arbitration Agreements Is Irrelevant and Incorrect ................................... 18

IV. CONCLUSION .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bowerman v. Field Asset Services, Inc.*,
　39 F.4th 652 (9th Cir. 2022) ........................................................................... 6

*Coinbase, Inc. v. Bielski*,
　559 U.S. ___, 143 S. Ct. 1915 (2023) ....................................................... *passim*

*Danley v. Encore Capital Group, Inc*.,
　No. 16-1670, 680 Fed. Appx. 394 (6th Cir. Feb. 22, 2017) ................. 14

*Dynamex Operations West, Inc. v. Superior Court*,
　4 Cal. 5th 903 (Cal. 2018) ....................................................................... 4, 20

*Franklin v. Cmty. Reg'l Med. Ctr.*,
　998 F.3d 867 (9th Cir. 2021) ...................................................................... 19

*Gemilyan v. Rolls-Royce Motor Cars NA, LLC*,
　501 F. Supp. 3d 844 (C.D. Cal. 2020) .................................................... 19

*Griggs v. Provident Consumer Discount Co*.,
　459 U.S. 56 (1982) ....................................................................................... 10

*Hadlock v. Norwegian Cruise Line, Ltd.*,
　No. SACV 10-0187 ...................................................................................... 15

*Hill v. Xerox Business Services, Inc.*,
　59 F.4th 457 (9th Cir. 2023) (Van Dyke, J., dissenting) ....................... 8

*Izett v. Crown Asset Mgmt., LLC*,
　Case No. 18-cv-05224-EMC, 2019 WL 4845575 (N.D. Cal. Oct. 1, 2019) ...................... 15

*Jacobson v. Snap-on Tools Co*.,
　No. 15-cv-02141-JD, 2015 WL 8293164 (N.D. Cal. Dec. 9, 2015) .................... 20

*Jenks v. DLA Piper Rudnick Gray Cary US LLP*,
　243 Cal. App. 4th 1 (2015) ....................................................................... 19

*Kim v. CashCall, Inc.*,
　2017 WL 8186683 (C.D. Cal. Jun. 8, 2017) ....................................... 16, 17

*Kindred Nursing Centers L.P. v. Clark*,
　581 U.S. 246 (2017) .................................................................................... 18

*Kramer v. Toyota Motor Corp.*,
　705 F.3d 1122 (9th Cir. 2013) ................................................................... 19

iv

*Mango v. City of Maywood*,
  2012 WL 5906665 (C.D. Cal. Oct. 5, 2012) ........................................ 16

*In re: Midland Credit Mgmt., Inc. Telephone Consumer Protection Litig.*,
  Case No.: 11md2286-MMA (MDD), 2019 WL 398169 (S.D. Cal. Jan. 31, 2019) ...................... 14, 15

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305 (2005) .......................................................... 20

*Nagrampa v. Mailcoups, Inc.*,
  469 F.3d 1257 ................................................................................ 20

*Nicholson v. Titlemax of Virginia, Inc.*,
  1:19CV490, 2020 WL 1942642 (M.D.N.C. Apr. 22, 2020) ............... 14

*Norcia v. Samsung Telecomms. Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) ......................................................... 12

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
  342 F.R.D. 274 (N.D. Cal. 2022) ........................................................ 3

*United States v. Sineneng-Smith*,
  __ U.S. __, 140 S. Ct. 1575 (2020) ................................................. 13

*Vazquez v. Jan-Pro Franchising, Int'l*,
  986 F.3d (9th Cir. 2021) ..................................................................... 5

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
  10 Cal. 5th 944 (Cal. 2021) ............................................................... 4

*White v. Turner*,
  2016 WL 1090107 (S.D. Tex. Mar. 21, 2016) .................................. 16

**Statutes**

Cal. Civ. Code § 1670.5(a) ................................................................... 20

Federal Arbitration Act ....................................................................... 18

**Other Authorities**

Fed. R. App. P. 8 ..................................................................................... 1

Federal Rule of Civil Procedure, Rule 23 ......................................... 1, 6

Federal Rule of Civil Procedure, Rule 27-3 .......................................... 1

Federal Rule of Civil Procedure, Rule 1004(c) ........................ 15, 16, 17

v

# I.  INTRODUCTION

Defendant Jan-Pro International, Inc. ("JPI") brings this Emergency Motion to Stay pursuant to Fed. R. App. P. 8 and Circuit Rule 27-3 because the District Court has refused to impose the stay of proceedings the United States Supreme Court just made clear is mandatory when, as here, a District Court denies a motion to compel arbitration. As set forth more fully below, this action arises out of Plaintiffs' claim that they (and every other franchisee in California) were "misclassified" as independent contractors under the franchise agreements they entered into with their respective master franchisees. (JPI is not a party to those agreements.) When Plaintiffs finally decided to move for class certification (14 years after they filed suit), JPI argued class certification was inappropriate because, among other things, virtually every class member had agreed to arbitrate their disputes. The District Court, however, found JPI waived the right to arbitrate despite the fact that (i) the claims of these Plaintiffs had only been litigated for about five months, (ii) no "class" discovery had ever been conducted, (iii) then-existing law likely made any motion to compel arbitration futile, and (iv) JPI only sought to compel arbitration of the claims of absent class members (none of whom were then before the Court), and not the named Plaintiffs. JPI's subsequent requests that the District Court reconsider that determination and that this Court review it under Rule 23(f) were both rejected.

1

In August of this year, following the Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 559 U.S. \_\_\_, 143 S. Ct. 1915 (2023), JPI renewed its request that the District Court stay all proceedings as to those class members who had agreed to arbitrate. The District Court denied that motion, and JPI immediately appealed. In its Order (which is appended hereto) on Plaintiffs' motion to certify that appeal as "frivolous," the District Court agreed that, under *Coinbase*, it was required to stay proceedings while JPI appealed its decision. But the District Court limited its stay to the 125 franchisees for whom JPI submitted signed franchise agreements. With respect to the nearly 2000+ other class members, the District Court refused to issue a stay because JPI relied (*without any objection from Plaintiffs*) on template agreements—as opposed to signed agreements—as evidence of the class members' agreement to arbitrate. Because the District Court's decision is irreconcilable with *Coinbase* and inconsistent with governing law, this Court should immediately enter an Order requiring that the District Court stay proceedings.

## II.  FACTUAL BACKGROUND

### A.    JPI's Business

JPI is an international franchisor that sells regional franchises to its Regional Franchise Developers ("RFDs") that give them the right to develop regional territories and sell "unit-franchises" to unit-franchisees. The RFDs are each separate businesses, with their own staffs, and JPI has no corporate relationship with them.

2

Likewise, JPI has no contractual relationship with the unit franchisees, as it is the RFDs that enter into franchise agreements with their own unit franchisees. *See Roman v. Jan-Pro Franchising Int'l, Inc.,* 342 F.R.D. 274, 287-88 (N.D. Cal. 2022).

While they are largely free to structure their businesses as they see fit, RFDs usually offer their unit franchisees an initial book of business, start-up equipment and cleaning supplies. The RFD's may also assist unit franchisees with business services like invoicing, billing and customer relations. In return, the RFDs collect a royalty fee from the gross revenues generated from the unit franchisees' customers. JPI is then paid a percentage of the royalty fee by the RFDs. However, JPI receives no percentage and is paid nothing for other fees, such as business services or any management fees the RFDs may collect.

### B.    The Plaintiffs and this Lawsuit

In 2008, a few unit franchisees from Massachusetts, New Jersey and Pennsylvania filed a putative class action against JPI in the District of Massachusetts alleging they had been misclassified. Plaintiffs Gloria Roman, Gerardo Vazquez and Juan Aguilar, who were unit franchisees based in California, became parties to that suit on December 12, 2008 when an amended complaint was filed. (District Court Docket ["Dkt."] 29.) While that complaint purported to be a "national" class action, by agreement of the parties, no steps were taken regarding the certification of any class. To the contrary, "the parties represented that it would be in the interest of

judicial economy to proceed to summary judgment on plaintiffs' individual claims rather than adjudicating class certification first …." (Dkt. 97.) The focus of the case was further narrowed when the Massachusetts court decided to address the claims of the one Massachusetts plaintiff as a "test case" before considering "whether it should order briefing on class certification and scheduling generally." (*Id.* ¶¶ 2-3.)

In August 2014, the Massachusetts court granted JPI summary judgment on the Massachusetts plaintiff's misclassification claim. In the months that followed, named plaintiffs from all states other than California were dismissed from the case. The California plaintiffs subsequently moved to transfer venue to California, and in the fall of 2016, that motion was granted. (Dkt. 229 at 2-3.) Five months later, JPI moved for summary judgment (solely as to the named Plaintiffs) on the same record facts that led the Massachusetts District Court to grant summary judgment on the Massachusetts plaintiff's misclassification claim. On May 24, 2017, the District Court granted JPI's motion for summary judgment.

Plaintiffs appealed. While that appeal was pending, the California Supreme Court issued its decision in *Dynamex Operations West, Inc. v. Superior Court,* 4 Cal. 5th 903 (Cal. 2018), which held that, for purposes of the Wage Orders, a worker was presumed to be an employee unless the hiring entity could prove all three prongs of an ABC test. This Court then certified to the California Supreme Court the question of whether the ABC test was retroactive. It concluded it was. *See Vazquez v. Jan-*

*Pro Franchising Int'l, Inc.,* 10 Cal. 5th 944 (Cal. 2021). Based on that decision, this Court vacated the District Court's grant of summary judgment and remanded the action for further proceedings consistent with its opinion. *See Vazquez v. Jan-Pro Franchising, Int'l,* 986 F.3d at 1117-18, 1121 (9th Cir. 2021).

### C. The District Court Certifies a Class that Dates back to 2004 and Grants in Part Plaintiffs' Motion for Summary Judgment.

Over nine months after this Court issued its mandate, Plaintiffs filed a motion to certify a class consisting of "all unit franchisees who have *signed franchise agreements* with master franchisees in the state of California and have performed cleaning services for defendant since December 12, 2004." (Dkt. 290.) JPI opposed that motion on several grounds, including by arguing that Plaintiffs could not show typicality or adequacy because the absent class members had agreed to arbitrate their claims. JPI did not, however, seek to compel the named Plaintiffs to arbitrate.

By Order dated August 2, 2022, the District Court granted Plaintiffs' motion in part. (Dkt. 369.) Concluding that JPI waived the right to compel the absent class members to arbitrate because "Defendant could have moved to compel our named Plaintiffs to arbitrate" (*id.* at 14), the District Court certified a class on a number of claims, including Plaintiffs' claim for reimbursement of the sales and marketing and management fees they paid their respective RFDs. While not argued by Plaintiffs, the District Court concluded that Plaintiffs' claim for these fees was governed by the ABC test, and not *Borello*, because these fees were somehow encompassed by a

section of the Wage Order which provides that "[n]o employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment …." Wage Order 5-2001(8).

## D.   JPI's Rule 23(f) Petition

Confronted with a ruling that is irreconcilable with basic rules of statutory construction and this Court's decision in *Bowerman v. Field Asset Services, Inc.*, 39 F.4th 652 (9th Cir. 2022)—yet which exposes JPI to tens of millions of dollars of potential liability—JPI filed a Petition for Permission to Appeal the class certification ruling under Federal Rule of Civil Procedure 23(f). By Order dated November 10, 2022, this Court, "in its discretion," denied JPI's Petition. (ECF 6 in Case No. 22-80081 [Dkt. 383].)

More than fourteen years after filing their initial complaint, Plaintiffs commenced their first efforts at any California wide discovery. They also then commenced efforts to determine who belonged to the class the District Court certified. Notably, while the class definition was limited to unit franchisees that "signed franchise agreements," Plaintiffs never requested actual signed unit franchise agreements from the various California RFDs. Instead, Plaintiffs relied on unsigned template agreements contained in the Franchise Disclosure Documents ("FDD's") filed by each RFD to generate their class list.

Because the District Court made clear it would not revisit its class certification ruling (it summarily denied JPI's motion for reconsideration [see Dkt. 376]), JPI could only conclude it would have no opportunity to seek review of the District Court's waiver ruling until it litigated the merits of Plaintiffs' claims to judgment. Then, on June 23, 2023, the Supreme Court issued *Coinbase*, which unequivocally held that a district court must stay proceedings while an interlocutory appeal on arbitration is ongoing.

On August 10, 2023, after assembling (i) the information needed to show which class members had signed franchise agreements that contained arbitration clauses, (ii) declarations from the RFDs who contracted with the unit franchisees, and (iii) 125 separate actual signed franchise agreements, JPI filed a motion to compel arbitration. (Dkt. 454.) The motion presented unrebutted evidence that the following class members signed franchise agreements that contained arbitration agreements:[1] (i) all unit franchisees in California who signed franchise agreements

---

[1]     *See* Dkt. 455 to Dkt. 455-9 (Declaration of Heather Lanyi re: Motion to Compel and exhibits, attached hereto as "Exhibit 1"): Dkt. 455-1 Exs. 5, 7 (§16 in each), Exs. 9-11 (§21), Exs. 12-14 (§20 in each); Dkt. 455-2 Exs. 1-6 (§16 in each), Ex 7 (§22), Exs 8-13 (§21); Dkt. 255-3 and 255-4, Part 1- Exs. 3-8 (§16 in each), Exs. 9-11 (§21 in each), Exs. 12-14 (§20 in each) and Part 2- Exs. 17-22 (§16 in each), Exs. 23-24 (§21 in each), Exs. 25-28 (§20 in each); Dkt. 255-5 and 255-6, Part I Exs. 1-2 (§16 in each), Exs. 6-7 (§22 in each) and Part 2, Exs. 8-13 (§21 in each); Dkt. 255-7 Ex. 1 (§16), Exs. 3-6 (§16 in each), Exs. 7-8 (§22 in each), Exs. 9-14 (§21 in each), Ex 15 (§22), Exs. 16-21 (§21 in each); Dkt. 255-8 Exs. 1-11 (§16 in each); Dkt. 255-9 Ex. 3 (p.32), Ex. 4 (p.33), Exs. 5-6 (§18), Ex. 7 (§20), Exs. 8-9 (§21), Exs. 11-12 (§20 in each), Ex. 13 (§20), Ex. 14 (§16), Exs. 17-19 (§16), Ex.

7

from 2010 forward, and (ii) all unit franchisees who bought franchises from the RFDs for the Los Angeles and Sacramento regions at any point prior to 2010.[2]

On August 21, 2023, without hearing argument, the District Court denied that motion. (Dkt. 464.) JPI filed its Notice of Appeal the same day. (Dkt. 465.)

### E. The District Court's Refusal to Completely Stay Proceedings

On August 22, 2023, Plaintiffs filed a motion to "certify" JPI's appeal as "frivolous." (Dkt. 466.) JPI opposed the motion noting, among other things, that (i) *Coinbase* required that the court stay proceedings, and (ii) while the District Court disagreed with JPI's argument that it did not waive arbitration as to the absent class members, multiple district courts, another federal appellate court, and one sitting Judge on this Court did not. *See Hill v. Xerox Business Services, Inc.*, 59 F.4th 457 (9th Cir. 2023) (Van Dyke, J., dissenting). This alone undermined any notion that JPI's appeal was "frivolous."

By Order dated August 25, 2023 (Dkt. 477), the District Court agreed to stay proceedings as to the 125 class members for whom JPI tendered signed agreements (concluding a stay was required under *Coinbase*) but refused to issue a stay as to any

---

20 (§22), Exs. 21-24 (§21 in each), Ex. 25 (§20), and Ex. 26 (§20).

[2]     JPI's Motion does not encompass class members who signed franchise agreements in the following markets in the years noted, as their agreements did not include an arbitrate clause: (i) Central Coast – 2004-2007, 2009; (ii) Greater Bay – 2004-2005; (iii) Southern California – 2004-2005; (iv) San Diego – 2007-2009; (v) Ontario – 2005; (vi) San Francisco – 2005-2006; (vii) Silicon Valley – 2005.

8

other class members. Specifically, even though Plaintiffs themselves did not contest JPI's assertion (supported by the sworn testimony of the RFDs) that the class members JPI identified had signed franchise agreements containing arbitration clauses, the District Court held a stay was not warranted as to the other class members because JPI failed "to present all such arbitration agreements." (Dkt. 477 at 1.) In essence, the District Court held that (i) JPI had to produce signed arbitration agreements for each of the 2200+ class members, and (ii) the same exemplar agreements Plaintiffs used to ascertain the members of a class limited to those who "signed franchise agreements" were insufficient to prove that the class members signed franchise agreements containing arbitration clauses. (*See* Dkt. 459.)

Trial is scheduled to commence on October 16, 2023.

## III.  ARGUMENT

**A.  The Supreme Court Has Made Clear That a Stay of Proceedings Is Mandatory When a Party Files an Interlocutory Appeal from the Denial of a Motion to Compel Arbitration**

This Court should issue a stay as to the remaining class members because the District Court lacked the power to deny that stay. On Monday, August 21, 2023, JPI filed a Notice of Appeal from the District Court's denial of its motion to compel arbitration. (ECF 1.) The Supreme Court's opinion in *Coinbase*—which reversed the same District Court that denied JPI's motion—makes clear that this filing deprived the District Court of jurisdiction to address the arbitrability of the class members' claims and, more importantly, made the issuance of a stay mandatory. In *Coinbase*,

as here, the defendant filed an interlocutory appeal from the District Court's order denying its motion to compel arbitration. The District Court then concluded that the defendant was not entitled to a stay pending the resolution of its appeal. *Coinbase*, 143 S. Ct. at 1919. This Court likewise refused to impose a stay. *Id*.

The Supreme Court granted certiorari to address the precise question presented here: "whether the district court *must* stay its pre-trial and trial proceedings while the interlocutory appeal [from the denial of a motion to compel arbitration] is ongoing." *Id*. at 1918 (emphasis added). The unequivocal answer to this question, the Supreme Court held, was "yes. The district court must stay its proceedings." *Id*. This rule stems from the settled rule that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Id*. at 1919 (quoting *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982)). "[W]hen a party appeals the denial of a motion to compel arbitration, whether 'the litigation may go forward in the district court is precisely what the court appeals must decide.'" *Coinbase*, 143 S. Ct. at 1920 (*quoting Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997)). Therefore, under *Griggs*, a district court must stay proceedings. *Id*.

The District Court refused to do so. Although it "granted" a stay as to the 125 class members whose arbitration agreements JPI filed as templates of those signed by other class members, it concluded no stay was warranted as to the other class

members because JPI did not file the actual arbitration agreements of all 2200+ class members. That ruling was not only incorrect and contrary to the class definition Plaintiffs suggested and the District Court adopted (*see* Point II, *infra*), but is incompatible with *Coinbase*. The rule *Coinbase* announced was not subject to exception. In fact, the Supreme Court rejected every argument the plaintiffs in that case pressed in urging a different result—including their argument that an automatic stay requirement would encourage frivolous appeals (which this one certainly is not). The District Court's mistaken belief that JPI failed to lay a sufficient evidentiary foundation hardly warrants a departure from this rule. If it did, a district court could refuse to stay proceedings if, for example, it held that an arbitration agreement had been forged, that there had been fraud in the execution of the agreement, that there had not been a sufficient showing of assent, or that an arbitration agreement failed for lack of consideration. But the Supreme Court countenanced no such exceptions.

The Supreme Court recognized that, "[a]bsent an automatic stay of district court proceedings, Congress's decision in § 16(a) to afford a right to an interlocutory appeal would be largely nullified. If the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along." *Id*. at 1921.

That is precisely the predicament in which JPI finds itself. It is also why its Emergency Motion should be granted.

## B. The District Court's Basis for Refusing to Grant a Stay Was Erroneous

Assuming *arguendo* the merits of JPI's appeal of the denial of its motion to compel arbitration was properly before the District Court, its conclusion that JPI was not entitled to a stay is incorrect. Contrary to the District Court's apparent belief to the contrary, a party seeking to compel arbitration (especially of non-named class members) need not produce the actual written arbitration agreement of every class member. Rather, a party need only prove "the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotations omitted).

Here, JPI submitted to the District Court: (i) franchise agreements containing arbitration clauses signed by the unit franchisees (class members) in each year encompassed by the class definition (*see*, *e.g.*, Dkt. 455-1 through Dkt.455-9); and (ii) unrebutted testimony that these signed franchise agreements were the same as the template franchise agreements contained in the FDDs the RFDs filed with the State of California each year (*see*, *e.g*., Dkt. 455-1 ¶ 2, Dkt. 455-2 ¶ 3, Dkt. 455-3 ¶ 4, Dkt. 455-5 ¶ 2, Dkt. 455-7 ¶ 3, Dkt. 455-8 ¶ 2). In all, 125 template agreements were submitted. Critically, *Plaintiffs did not contest that these templates accurately reflected the terms of the franchise agreement each class member signed*, nor did

12

they dispute that all the class members who were the subject of JPI's motion signed franchise agreements that contained arbitration clauses.

Their failure to contest these facts was hardly surprising. The class Plaintiffs convinced the District Court to certify is expressly limited to *"[a]ll unit franchisees who signed a franchise agreement* with a master franchisee in the state of California and who performed cleaning services for defendant from December 12, 2004, to January 31, 2017" (Dkt. 379-1), and Plaintiffs' Complaint expressly alleges that these franchise agreements were adhesion contracts and that "[n]one of the Jan-Pro cleaning workers is able to negotiate for different terms and conditions from those appearing in the form franchise agreement[s]." (Dkt. 244 ¶¶ 17-18.)

Despite the undisputed state of the record on this issue, the District Court *sua sponte* decided that JPI's proffer was somehow insufficient to meet its initial burden of demonstrating by a preponderance of the evidence that certain class members had agreed to arbitrate these disputes.[3] As a result, it decided to stay the litigation for only the 125 class members for whom signed agreements were submitted, and not all 2100+ others. Its conclusion was incorrect, for at least three reasons.

---

[3] It is unclear why the District Court sought to press an "issue" Plaintiffs did not. It is clear that it's decision to do so was improper. "In our adversarial system of adjudication, we follow the principle of party presentation . . . 'in both civil and criminal cases, in the first instance and on appeal ..., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *United States v. Sineneng-Smith*, __ U.S. __, 140 S. Ct. 1575, 1579 (2020).

**C.     It Is Settled Law That Templates May Be Used to Show That Class Members Agreed to Arbitrate**

First, the case-law clearly supports the use of template agreements where, as here, the fact that arbitration agreements had been executed is not in dispute. *See*, *e.g*., *Danley v. Encore Capital Group, Inc*., No. 16-1670, 680 Fed. Appx. 394, at *397 (6th Cir. Feb. 22, 2017) ("quickly dispens[ing] with the argument that the district court erred in relying upon an exemplar agreement and other pertinent account records defendants used to establish the validity of the arbitration agreement" in a putative class action because the plaintiff failed to "present facts such that a reasonable factfinder could conclude the arbitration agreement did not exist"); *Nicholson v. Titlemax of Virginia, Inc.*, 1:19CV490, 2020 WL 1942642, at *4 (M.D.N.C. Apr. 22, 2020) ("given the large volume of documents at issue, it was entirely appropriate for Plaintiffs to use exemplar agreements, alike in every meaningful way to their own specific agreements, to prove the existence of valid arbitration agreements"). In *In re: Midland Credit Mgmt., Inc. Telephone Consumer Protection Litig.*, for example, the plaintiffs in a putative class action argued that the defendant's motion to compel arbitration had to be denied because, absent the actual signed arbitration agreements, the defendant failed to "provide[] sufficient evidence of valid agreements to arbitrate between Plaintiffs and Citibank." Observing that a custodian of records established the validity of the templates and, further, that the plaintiffs had "not come forward with any evidence to rebut that the terms produced

14

by Defendants are the same as those entered between Plaintiffs and Citibank," the court concluded that the exemplars were sufficient evidence of the plaintiffs' obligation to arbitrate. *In re: Midland Credit Mgmt., Inc. Telephone Consumer Protection Litig.*, Case No.: 11md2286-MMA (MDD), 2019 WL 398169, at **4-5 (S.D. Cal. Jan. 31, 2019); *accord Izett v. Crown Asset Mgmt., LLC*, Case No. 18-cv-05224-EMC, 2019 WL 4845575, at *3 (N.D. Cal. Oct. 1, 2019) (same); *Hadlock v. Norwegian Cruise Line, Ltd.*, No. SACV 10-0187 AG (ANx), 2010 WL 1641275, at *1 (C.D. Cal. Apr. 19, 2010) (same).

Here, as in these cases, the unrebutted testimony of the custodians of records for the respective RFDs proves that the templates attached to their Declarations were the agreements they used to sell franchise. And, as noted above, Plaintiffs admit (in fact affirmatively allege) that these templates could not be modified.[4]

**D.    Rule 1004 of the Federal Rules of Evidence Allows a Party to Rely on Other Evidence to Prove the Existence of an Agreement**

Second, even if there was some legal obligation (or reason) to produce every signed franchise agreement for every class member, JPI was excused from doing so. As the District Court observed, JPI is not a party to the franchise agreements. (Dkt. 477 at 1.) Those agreements were entered into by the class members and their

---

[4]    Assuming JPI actually had them (or was able to obtain them), the alternative would have been to submit over 2200 franchise agreements to the District Court. Nothing would be served by forcing parties to undertake such an absurd step.

respective RFDs, who did not give copies of those agreements to JPI. (*See* Dkt. 455-1 ¶ 4, Dkt. 455-2 ¶ 5, Dkt. 455-3 ¶ 6, Dkt. 455-5 ¶ 4, Dkt. 455-7 ¶ 5, Dkt. 455-8 ¶ 5, Dkt. 455-9 ¶ 5.) Accordingly, while it was able to obtain examples of the agreements the class members signed each year in each region, JPI does not have copies of all those agreements—through no fault of its own. In such circumstances, Rule 1004 of the Federal Rules of Evidence allows a party to use other evidence to establish the terms of a missing document "[a]s long as the party using the evidence did not act in bad faith …." *Kim v. CashCall, Inc.,* 2017 WL 8186683, *2 (C.D. Cal. Jun. 8, 2017); *see also Mango v. City of Maywood,* 2012 WL 5906665, *11 (C.D. Cal. Oct. 5, 2012) (determining that employment contract existed even though parties only presented secondary evidence of its contents). In *White v. Turner,* 2016 WL 1090107, *3 (S.D. Tex. Mar. 21, 2016), for example, the court held that if an arbitration agreement "existed but cannot be produced because it has been lost or destroyed, a court may still enforce it and compel arbitration if the moving party can show its contents and that it was not lost or destroyed in bad faith." Because the defendant in *White* "presented evidence that during the relevant period, [it] invariably required every employee and prospective employee to sign an arbitration agreement as a condition of employment," it was not required to produce the actual document. *Id.* Similarly, in *Kim*, the district court found that because the defendant had exercised "reasonable diligence" in seeking to locate the plaintiff's

16

acknowledgement form (that contained the arbitration clause), he could rely instead on a copy of the standard acknowledgement form that every employee was required to sign. *See Kim,* 2017 WL 8186683, at *3.

JPI introduced unrebutted evidence which showed it never had the class members' individual franchise agreements and that it asked each of its RFDs to search their files for those documents. (Dkt. 454 at p.9). In fact, the parties stipulated that JPI "did not have dealings [with] or data regarding unit franchisees." (Dkt. 379 at p.2.) Under these circumstances, Rule 1004(c) allows JPI to rely on other evidence—such as the templates and unrebutted testimonial evidence it introduced—to establish that the class members agreed to arbitrate.

## E. The District Court Impermissibly Applied Two Different Standards to the Same Question

Finally, the standard the District Court applied to JPI is irreconcilable with the standard it applied in determining which entities were members of the certified class. As noted above, the class definition the District Court approved (Dkt. 380) consists of individuals who "signed a franchise agreement with a master franchisee in the state of California." But in determining whether entities were properly deemed members of that class, the court did not require Plaintiffs to produce signed franchise agreements (and Plaintiffs never did so). Indeed, Plaintiffs came forward with only *three* franchise agreements (those of the three named plaintiffs). Instead of requiring evidence of the signed franchise agreements that dictate who may be in the class, the

17

District Court let Plaintiffs rely on the lists of franchisees set forth in the FDDs that the RFDs filed with the State of California between 2004 and 2017. (Dkt. 382.) Those FDDs—which by law must contain not only the names of franchisees but also the template franchise agreement franchisees are asked to sign—are the very same documents JPI relied on in establishing which class members agreed to arbitrate. Yet the evidence that was sufficient for Plaintiffs to represent a class of 2200+ franchisees who "signed franchise agreements" was deemed *not* sufficient proof that those same class members had signed franchise agreements which contain agreements to arbitrate. That approach is inequitable and, because it disfavors arbitration, irreconcilable with "equal treatment" principle that underlies Section 2 of the Federal Arbitration Act. *See Kindred Nursing Centers L.P. v. Clark*, 581 U.S. 246 (2017); *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2010).

## F. The District Court's Advisory Opinion on Whether JPI Could Enforce the Arbitration Agreements Is Irrelevant and Incorrect

In denying a stay as to all class members who agreed to arbitrate other than the 125, the District Court made certain arguments as to why it believed the arbitration agreements were not enforceable, either generally or by JPI. Although it is not clear what role these conclusions played in the District Court's refusal to stay proceedings, JPI briefly addresses the District Court's errors.

Relying on a single example of a single franchise agreement used by a single RFD in one year, the District Court first opined that JPI would not be able to compel

arbitration under that agreement because it only required arbitration of "any dispute or disagreement between the parties to this Agreement …." (Dkt. 477 at 2.) But the "Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). Under California contract law, non-signatories may enforce arbitration agreements: (i) when "a signatory attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants" (*Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021) (internal quotation omitted); (ii) "if the nonsignatory is a third-party beneficiary of the agreement" (*Gemilyan v. Rolls-Royce Motor Cars NA, LLC*, 501 F. Supp. 3d 844, 848 (C.D. Cal. 2020)); and (iii) "where there is sufficient identity of parties" (*Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 243 Cal. App. 4th 1 (2015)). Because Plaintiffs repeatedly claim (and the District Court found) that the RFDs act as JPI's agents (*see* Dkt. 244 at ¶¶ 8-16), because Plaintiffs claim JPI is a "beneficiary" of the unit franchise agreements (*id.* at 20), and because Plaintiffs' claims are "intimately founded in and intertwined with the underlying contract obligations," JPI will (if given the chance) be able to prove it can enforce the arbitration clauses in the franchise agreements.

19

The District Court's other conclusion—that all the arbitration agreements contain "onerous" conditions, such as the requirement that the parties split the costs of arbitration—ignores the fact (among others) that "unconscionability is determined as of the time the contract was entered into, not in light of subsequent events." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1324 (2005); *see also* Cal. Civ. Code § 1670.5(a). At the time these franchise agreements were made, it is indisputable that the parties were contemplating a commercial relationship. Indeed, prior to *Dynamex*, the District Court issued summary judgment **for JPI** on Plaintiffs' misclassification claims—meaning they were found to be "independent contractors." And in commercial contracts like the ones before this Court, the default rule is that the parties will split arbitration costs equally. *See Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1285) (fee-splitting arrangement in franchise agreement was not unconscionable); *Jacobson v. Snap-on Tools Co*., No. 15-cv-02141-JD, 2015 WL 8293164, at *5 (N.D. Cal. Dec. 9, 2015) (same). As such, if the District Court was prematurely wrestling with whether the franchise agreements might be unconscionable, there is nothing in the record that supports its concern.

## IV.  CONCLUSION

For the foregoing reasons, and in accord with the holding of Coinbase, this Court should order the District Court to stay proceedings as to *all* the class members that were the subject of JPI's Motion to Compel Arbitration.

Dated:  August 28, 2023        LITTLER MENDELSON, P.C.

*s/ Richard H. Rahm*

Richard H. Rahm

Attorneys for Defendant and Petitioner
JAN-PRO FRANCHISING
INTERNATIONAL, INC.

Dated:  August 28, 2023        DLA PIPER LLP (US)

*s/ Norman M. Leon*

Norman M. Leon

Attorneys for Defendant and Petitioner
JAN-PRO FRANCHISING
INTERNATIONAL, INC.

Dated:  August 28, 2023        O'HAGAN MEYER

*s/ Jeffrey M. Rosin*

Jeffrey M. Rosin

Attorneys for Defendant and Petitioner
JAN-PRO FRANCHISING
INTERNATIONAL, INC.

4867-0639-8844.5 / 120920-1001

21